BARRAGAR, Respondent, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Appellants.

*September 17—October 13, 1931.*

552

For the appellants there was a brief by the *Attorney General, Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and *Fisher, Cashin & Reinholdt* of Stevens Point, attorneys for the Meyer Fur-

nace and Supply Company and the Hardware Mutual Casualty Company, and oral argument by *Mr. Charles H. Cashin* and *Mr. Levitan.*

For the respondent there was a brief by *Wood, Warner & Tyrrell* and *Jackson M. Bruce,* all of Milwaukee, and oral argument by *Mr. Bruce.*

WICKHEM, J. It is the contention of the appellant commission that the only question involved is whether there is credible evidence to sustain the finding that at the time of the injury Mr. Barragar was not performing services growing out of and incidental to his employment.

On the part of the respondent it is contended that the commission erroneously based its conclusions upon the fact that the trip was primarily for the purpose of the deceased and only secondarily for that of his employer, and that this was an error of law rather than of fact, since it constituted the application of an erroneous test to facts that were not in dispute.

The case presents a difficult problem and one to which earnest consideration has been given. We have concluded that it is essential, by some process or other, to determine whether, at the outset, the trip in question was that of the employer or that of the employee. Having determined that it was the employer's trip, the employee is engaged in his employer's business and acting within the scope of his employment while going to and returning from the terminus of the trip. If it is the employee's trip, he is not within the scope of his employment while en route to or returning from the terminus of his trip. In case it is the employer's trip and there are any detours for purely personal objectives, such detours must be separated from the main trip and the employee held to be outside the scope of his employment during such detour. If it is his own trip, then such de-

tours as are made for the purpose of dispatching business for his employer must be held to be within the scope of his employment.

If, in the instant case, the trip is to be regarded at the outset as one for the benefit and business purposes of the employer, compensation must be given if the deceased was returning to Milwaukee and had arrived at a point nearer Milwaukee than Stanley, which would be the terminus of the business trip. If it was his own trip, then the deceased was not acting within the scope of his employment or engaged in service for his employer at the time of the accident because at that time he was on the regular return route and had made no deviations from the path which constituted his return. The difficulty in such cases is to establish some basis for ascertaining whose trip it was. While in a sense this is a question of fact, yet it is a question that must be determined by the application of some legal test or standard.

In the *Matter of Marks v. Gray*, 251 N. Y. 90, 167 N. E. 181, the New York court, speaking through Mr. Justice CARDOZO, says:

"A servant in New York informs his master that he is going to spend a holiday in Philadelphia, or perhaps at a distant place, at San Francisco or at Paris. The master asks him while he is there to visit a delinquent debtor and demand payment of a debt. The trip to Philadelphia, the journey to San Francisco or to Paris, is not a part of the employment. A different question would arise if performance of the service were to occasion a detour, and in the course of such detour the injuries were suffered. . . .

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If,

however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

It is our conclusion that the test laid down by the New York court is sound. If this test is applied to the findings of the commission, it is clear that the business errands requested of deceased as an incident to this trip were so far subsidiary to the personal objectives of the deceased that the trip would not have been insisted upon for business purposes had the deceased elected not to make the trip for his own purposes, and that in consequence the service was not a concurrent cause of the trip. The ascertainment of the facts necessary to apply this test involves the determination of a question of fact, and if there is evidence to sustain the commission its findings cannot be disturbed. We have concluded that there is evidence upon which the commission could have concluded that the business errands were involved as mere incidents to a pleasure trip, for which permission had been unconditionally given, and that they were in no way concurring causes of the trip. That there is evidence from which the commission could have come to a contrary conclusion is true, but immaterial in view of the rules applicable to review of findings by the commission.

Respondent relies upon the case of *Schmiedeke v. Four Wheel Drive Auto Co.* 192 Wis. 574, 213 N. W. 292, as controlling this case. The difficulty with the contention is that that which is in dispute here was a conceded fact in the *Schmiedeke Case*. In the latter case the trip was concededly undertaken on behalf of the employer. The employee was injured upon his return to the office of his employer. During the course of the trip the employee transacted some business for his employer and also attended to some of his own

personal business. The court, in disposing of the appeal, makes the following significant statement:

"The trip for the week was an entity. It included going and coming. Even though at times during the week he departed from the scope of his employment, upon his return trip to Clintonville for the purpose of reporting to the office pursuant to his instructions he was again within the scope of his employment."

There is nothing in the *Schmiedeke Case* inconsistent with the views expressed in this case. Upon the determination that a particular trip is that of the employer or that of the employee, the trip is an entity in the sense that the initial determination answers the question whether the employee was within the scope of his employment while going to and returning from the trip, and the statement of the court, above quoted, indicates plainly a recognition of the fact that there may be departures from the purposes of the trip during which the legal relations of the employer and employee may be changed.

A fair construction of the findings of the commission does not warrant the criticism that the commission has applied an erroneous test to the facts. The commission finds that "the deceased asked permission from the manager of the respondent company to go to Couderay to get his wife. Permission was granted. Incidentally, at the time of granting permission to make this trip, the manager mentioned two past-due accounts at two cities between Milwaukee and Couderay, and told the deceased to stop at both of them and see what he could do toward collection of them. . . . On the whole record, the commission feels and so finds that the primary purpose of the trip was to get his wife and bring her back to Milwaukee, and merely incidentally to check up on customers of the respondent."

These findings of fact are entirely sufficient to warrant the application of the rule as announced by the New York

court in the *Matter of Marks v. Gray,* heretofore cited. The application of this test does not require or authorize the commission to weigh the motives and objects of the employer and employee for the purpose of ascertaining the most important or compelling cause as well as the secondary cause of the journey. It simply requires the commission to find that the service of the employer is at least a concurrent cause of the trip.

In view of the foregoing conclusions, it follows that the judgment of the circuit court must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the order of the Industrial Commission.