ADAMS, Respondent, vs. QUALITY SERVICE LAUNDRY & DRY CLEANERS and another, Appellants.

LA REAU, Respondent, vs. SAME, Appellants.

*September 15—October 12, 1948.*

For the appellants there was a brief by *Roberts, Roe & Boardman,* attorneys, and *Walter M. Bjork* of counsel, all of Madison, and oral argument by *Mr. Bjork.*

For the respondent there was a brief by *Hall & Griffith* of Madison, and oral argument by *Laurence W. Hall.*

WICKHEM, J.    The accident happened on December 6, 1946, between 4 and 4:30 o'clock in the afternoon near the junction of Highway 51 with Highway 106.    This point is about one mile from Stoughton.    Plaintiff was driving from Stoughton to Madison in the car of her brother-in-law, John P. Adams.    She collided with a laundry truck driven by Earl

Skaar, an employee of Quality Service Laundry & Dry Cleaners. Skaar was fatally injured. Since his negligence and Miss La Reau's freedom from negligence are conceded by defendants, the circumstances of the collision need not be detailed.

There are two principal questions common to both appeals. (1) Does the evidence sustain the finding of the jury that defendant's truck driver was acting within the scope of his employment at the time of his collision; and, (2) if not, was he then driving the truck with the consent of his employer so as to bring into operation the omnibus coverage clause of the insurance policy?

Skaar had been employed as a truck driver by Quality Service Laundry & Dry Cleaners in August, 1945, and assigned to a wholesale route consisting of hotels, fraternities, and rooming houses in the city of Madison. He did not have the care or custody of the truck after business hours and was furnished no transportation to and from work although during all of this period he resided in Stoughton. We shall not examine the question whether Skaar had any duties to perform with the laundry truck outside the city of Madison, although there is considerable evidence in the record addressed to that point. We think it perfectly clear from the record that at the time of the accident Skaar was not acting within the scope of his employment with the Laundry Company. He had had an accident in the morning of December 6th which disabled his own car. On the occasion of the accident involved in this case he was using the laundry truck to secure parts for the repair of his car. He had finished his work for the day and no duty connected with his employment furnished the occasion for the trip that he was on when he came into collision with plaintiff's car. Upon this issue it is, of course, obvious that the mere fact that he was then driving with the consent of the laundry company would not mean that he was acting within the scope of his employment. In connection with this, see *Geldnich v. Burg,* 202 Wis. 209, 231 N. W. 624. The mere fact, also,

that permission to use the car for his private purposes might generate a sense of loyalty and co-operation on the part of a servant does not lead to the conclusion that the servant taking advantage of this permission is in a legal sense promoting or facilitating the master's business. *Gewanski v. Ellsworth,* 166 Wis. 250, 164 N. W. 996.

The question whether the evidence sustains the jury finding that the truck was being driven with the consent of the employer requires a different answer. Skaar's wife testified that for several months prior to the accident he had had the truck in Stoughton on numerous occasions and a witness maintaining the garage in Stoughton testified that he had seen Skaar driving the truck in Stoughton and assisted him in starting the truck on two occasions. While the officers of the Laundry Company categorically denied that except for the first two or three months of his employment Skaar had any duties involving use of the truck outside of the city of Madison, there was testimony by them that he had general authority to solicit business and pick up bundles and to get business on his own. It is further evident from the record that an accurate check was available as to the presence of company trucks after working hours and if, as the jury was entitled to conclude, the truck was frequently in the hands of Skaar after working hours, the case would seem clearly to be within the rule of *Christiansen v. Aetna Casualty & Surety Co.* 204 Wis. 323, 236 N. W. 109. In that case the question was whether the driver of a car was within the omnibus coverage clause of the policy. He boarded with the owner of the car and had been forbidden to use it. The owner had testified that he had taken unusual precautions to prevent use of the car by the boarder and had partially dismantled it and locked the garage door. On the other hand, there was testimony that the boarder was frequently seen driving the car in and about the community. This court held that the customary or frequent use of the car gave rise to a permissible inference that such use was by con-

sent of the owner. We conclude that the rule of that case is applicable here.

, Two errors are alleged, one in respect of the admission of testimony and one in respect of instructions. In view of our disposition of the case on the facts only the first need be dealt with here.

The trial court received testimony of a conversation in the hospital shortly after the accident between a traffic officer and Earl Skaar during the course of which Skaar stated to the officer that he had permission to use the laundry truck. This statement is clearly hearsay and not within any exception to that rule. We pass the question whether the time element was sufficiently fixed to establish that the statement was made under conditions of shock produced by the accident, and to bring the case within the rule of *Kressin v. Chicago & N. W. R. Co.* 194 Wis. 480, 215 N. W. 908. The fatal difficulty here is that the testimony was not descriptive of the circumstances of the collision or of declarant's conduct in connection with it. The matter is ruled by *Kowalsky v. Whipkey,* 240 Wis. 59, 2 N. W. (2d) 704. Since this evidence was directed to a critical and close issue of fact its admission must be held to be prejudicially erroneous.

We now come to a contention applicable only to an appeal in the La Reau case. It is contended that the award to Miss La Reau of $1,700 for pain and suffering is grossly excessive. While the case must be retried we deem it advisable to state that we think that defendant's contention on this point must be sustained. Plaintiff sustained bruises to her knee, left hip, and left breast; that on her knee resulting in a temporary condition of water on the knee. She also had some soreness along the ribs extending from the back to the breastbone, a muscular difficulty which responded to some fourteen manipulative treatments. There were no permanent injuries and very little pain and suffering. The amount of wages lost was

extremely small. We think the sum awarded was grossly excessive.

*By the Court.*—Judgments reversed, and causes remanded with directions to grant a new trial.